IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PRA'SHAWNA STACKER,
Individually and on behalf of all others,

        Plaintiff,

v.                                   Case No.  20-2581-JWB

INTELLISOURCE, LLC,

        Defendant.


**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant Intellisource, LLC's motion to dismiss. (Doc. 10.)  The motion has been fully briefed and the court is prepared to rule.  (Docs. 11, 17, 27.) For the reasons stated herein, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## I.     Facts

The following facts are taken from the allegations in Plaintiff's complaint.  (Doc. 1.)  This is a class action complaint alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  Plaintiff is a Kansas citizen and Defendant is a foreign limited liability company with its principal place of business in Colorado.  In August 2020, Plaintiff applied online for employment with Defendant.  Plaintiff was hired and began employment with Defendant in Kansas. Defendant obtained Plaintiff's consumer report from a third party.  On or about September 15, 2020, Defendant called Plaintiff and informed her of her termination due to information that was in her consumer report.  Plaintiff alleges that Defendant violated the FCRA by not providing her with a copy of the consumer report and a FCRA summary of rights prior to her termination,

1

and failing to allow her a reasonable amount of time to challenge the information in her consumer report.[1]  As a result, Plaintiff alleges that she has suffered damages due to the sudden loss of employment.  Plaintiff alleges that she may have been able to retain her employment with Defendant if she had been given the proper opportunity to address the information contained in the consumer report.  (Doc. 1 at 4.)

Plaintiff's complaint also contains class action allegations.  Plaintiff's proposed class includes the following individuals:

> All employees or prospective employees of Defendant that suffered an adverse employment action on or after November 17, 2018, that was based, in whole or in part, on information contained in a Consumer Report, and who were not provided a copy of such report, a reasonable notice period in which to address the information contained in the Consumer Report, and/or a written description of their rights in accordance with the FCRA in advance of said adverse employment action.

(*Id.*)

Plaintiff alleges that Defendant has acted willfully in disregarding the class's rights under the FCRA in that Defendant has had access to legal advice and also ignored regulatory guidance. (*Id.* at 9.)  Plaintiff seeks statutory damages for each violation under the FCRA for Plaintiff and the proposed class members.  Plaintiff also seeks punitive damages, costs, and attorneys' fees.  (*Id.* at 9-10.)  Defendant now moves to dismiss Plaintiff's class allegations on the basis that this court does not have personal jurisdiction over Defendant for a class action that includes non-Kansas members.  (Doc. 11 at 2.)

## II.     Standard

---

[1] Defendant disputes these allegations and has offered the FCRA notice that it allegedly provided to Plaintiff as an exhibit to its motion to dismiss.  (Doc. 11, Exh. 2.)  Recognizing that the court does not consider outside exhibits on a motion to dismiss, Defendant asserts that the exhibit is only for background purposes and does not seek to convert this motion to one for judgment on the pleadings.  (Doc. 11 at 3, n. 3.)  Defendant has also attached an "electronically generated timeline" to its reply brief.  (Doc. 27, Exh. 1.)  At this stage of the proceedings, the court declines to consider these exhibits as they were not attached to the complaint nor were they incorporated into the complaint by reference. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

Defendant brings this motion under both Fed. R. Civ. P. 12(b)(2) and 12(b)(6). On a Rule 12(b)(2) motion to dismiss, a plaintiff must make a prima facie showing that the court has personal jurisdiction over the defendant. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). The court must accept the allegations in the complaint as true and resolve all factual disputes in Plaintiff's favor. *Id.* "[B]efore a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (quotation and citation omitted). Because the FCRA does not authorize nationwide service of process, the federal rules authorize the application of Kansas law. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (applying Rule 4(k)(1)(A) in an action under 42 U.S.C. § 1983); *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1201 (D. Kan. 2016).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985). Therefore a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979); *see also Trujillo*, 465 F.3d at 1217-18. The requisite minimum contacts may be established under one of two theories: "specific jurisdiction" or "general jurisdiction."

General jurisdiction is based on an out-of-state company's "continuous and systematic" contacts with the forum state. *Old Republic Ins. Co.*, 877 F.3d at 094. Specific jurisdiction applies

when the suit arises out of or relates to a defendant's contacts with the forum state. *Monge v. RG Petro-Machinery (Grp.) Co. Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012). To satisfy specific jurisdiction, Plaintiff's injury "must arise out of or relate to activities that [defendant] purposefully directed at residents of the forum." *Id.* at 617; *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021). If the requisite minimum contacts are met, the court proceeds to determine whether the assertion of personal jurisdiction would "comport with fair play and substantial justice." *Trujillo*, 465 F.3d at 1221 (discussing factors the court is to consider). Plaintiff asserts that her complaint establishes both general and specific jurisdiction.

Defendant additionally argues that the complaint fails to plead a viable class action under Rule 12(b)(6) because the class includes non-Kansas members. In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.  Analysis

Defendant moves to dismiss on the basis that the court lacks personal jurisdiction and the complaint fails to state a claim. Although Defendant's memoranda attack the class allegations throughout, Defendant seeks to dismiss the entire complaint and makes statements concerning the plausibility of Plaintiff's claim.

### A.  Plaintiff's FCRA Claims

Plaintiff alleges violations of the FCRA due to Defendant's failure to provide Plaintiff with a copy of her consumer report and summary of rights prior to her termination and by failing to provide Plaintiff with a reasonable amount of time to respond to the negative information in her report. Under the FCRA, an employer must provide advance notice of the employer's intention to take adverse action on the basis of information contained in the consumer report. 15 U.S.C. § 1681b(b)(3)(A)(i)-(ii). The employer must also provide the applicant with a copy of the report and summary of rights under the FCRA. *Id.* The FCRA permits a plaintiff to recover damages when a defendant acted either negligently or willfully in violating the statute's requirements. *See* 15 U.S.C. § 1681o(a)(1) (providing for actual damages in cases of negligent noncompliance); *id.* § 1681n(a)(1)-(3) (providing for actual, statutory, and/or punitive damages, along with attorney's fees in cases of willful noncompliance).

Here, Defendant argues that Plaintiff has failed to state a claim. (Doc. 27 at 6.) Defendant's arguments refer to exhibits that the court has declined to review on a motion to dismiss. Based on the allegations in Plaintiff's complaint, the court finds that she has plausibly stated that Defendant violated the FCRA. The court further finds that it has specific personal jurisdiction over Defendant with respect to Plaintiff's individual claim. Defendant essentially concedes that specific jurisdiction is satisfied based on the allegations in Plaintiff's complaint. (Doc. 27 at 8.) According to the complaint, Plaintiff accepted employment with Defendant and was employed by Defendant in Kansas for a period of time. Defendant then terminated Plaintiff's employment in Kansas due to information in Plaintiff's consumer report without providing Plaintiff with her consumer report, the required notice, and a reasonable time to address the negative information. Plaintiff has allegedly suffered injuries as a result of these actions. The

court finds that these allegations are sufficient to establish specific personal jurisdiction such that Plaintiff's injuries arise out of Defendant's contacts with Kansas. *See Monge,* 701 F.3d at 617.

### B. Class Allegations

The main thrust of Defendant's motion to dismiss is that this court lacks personal jurisdiction over the class action allegations because the alleged class is a nationwide class with no restriction that the conduct complained of occurred in Kansas. Although this case is newly filed, Defendant argues that Plaintiff's nationwide class action lawsuit cannot go forward to discovery because it may ultimately include non-Kansas residents as members. According to Defendant, this would violate Defendant's due process rights because specific personal jurisdiction would be lacking in a case involving a non-Kansas class member and Defendant, a Colorado limited liability company that facilitates staffing for companies across the United States. Defendant further argues that this issue is not premature and should be resolved in order to prevent costly discovery regarding claims that are subject to dismissal.

Prior to delving into the discussion on specific jurisdiction, this court must first examine whether it has general jurisdiction over Defendant as Defendant concedes that a nationwide class action could proceed against it in a State in which the court has general jurisdiction over Defendant.

### 1. General Jurisdiction

As noted herein, general jurisdiction is based on an out-of-state company's "continuous and systematic" contacts with the forum state. *Old Republic Ins. Co.*, 877 F.3d at 094. Here, there is no dispute that Defendant is a Colorado limited liability company.[2] In *Daimler AG v. Bauman*,

---

[2] Although for subject matter jurisdiction purposes a limited liability company takes the citizenship of its members, that principle has not been applied to personal jurisdiction. *See Waldman v. Palestine Liberation Org*., 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity.") *See also Mountain Funding, LLC v. Blackwater Crossing, LLC*, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006) ("The practice of disregarding [an unincorporated association] as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject

the Supreme Court held that the "paradigm all-purpose forums" for a corporation include where it was incorporated and where it has its principal place of business. 571 U.S. 117, 137 (2014). Although not specifically addressed by *Daimler*, courts have applied the at-home test to unincorporated entities. *See Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 337 n.10 (5th Cir. 2020). Here, although Defendant is a Colorado limited liability company, Plaintiff makes no argument that Defendant is at home in Kansas. Rather, Plaintiff's argument concerning general jurisdiction pertains to the application of K.S.A. 17-7931. Essentially, Plaintiff argues that Defendant consented to general jurisdiction by registering to do business in Kansas as a foreign entity and that the statute provides a basis for this court to exercise personal jurisdiction over Defendant. (Doc. 17 at 9-12.) In response, Defendant argues that the statute at issue cannot cause it to be subject to general jurisdiction and that *Daimler* and its progeny forbid the exercise of general jurisdiction over a foreign entity based on a registration statute. The court finds that the statute at issue, K.S.A. 17-7931(g), does not provide statutory grounds for general jurisdiction here because the statute requires service of process on the secretary of state and Plaintiff served Defendant's registered agent. (Doc. 7.) A review of the statute and its interpretation by the Kansas Supreme Court is necessary here.

Pursuant to K.S.A. 17-7931(g), an application for registration as a foreign entity requires

an irrevocable written consent of the foreign covered entity that actions may be commenced against it in the proper court of any county where there is proper venue by the service of process on the secretary of state as provided for in K.S.A. 60-304, and amendments thereto, and stipulating and agreeing that such service shall be taken and held, in all courts, to be as valid and binding as if due service had been made upon the governors of the foreign covered entity.

---

matter jurisdiction.... This principle has not been applied to personal jurisdiction, which presents distinct due process issues.")

The prior version[3] of this statute has been interpreted by the Kansas Supreme Court as establishing a nonresident's consent to general jurisdiction if that nonresident company has registered to do business in Kansas. *See Merriman v. Crompton Corp*., 282 Kan. 433, 146 P.3d 162 (2006). As discussed herein, a court exercises jurisdiction over a defendant if there is a Kansas statute providing a basis for the exercise of jurisdiction and the exercise of personal jurisdiction complies with due process. *Id.* at 440 (citations omitted). In *Merriman*, the Kansas Supreme Court addressed whether certain Kansas statutes provided for the exercise of general jurisdiction over foreign entities. The court first discussed that the Kansas long arm statute, K.S.A. 60-308(b), does not provide a basis for general jurisdiction, but is limited to cases of specific jurisdiction. *Merriman*, 282 Kan. at 441-42. However, the state supreme court noted that other statutes may give rise to general jurisdiction. *Id.* at 442. The court then addressed the plaintiff's arguments that K.S.A. 2005 Supp. 17-7301, the prior version of K.S.A. 17-7931, provided a basis for Kansas courts to exercise general jurisdiction over a foreign entity.

The Kansas Supreme Court recognized that many courts have discussed that similar registration statutes provide a basis to exercise general jurisdiction in that they are construed as providing a consent to general jurisdiction by the registering entity. The defendants argued that the registration statute "contain[ed] no jurisdiction language and deal[t] only with the required content of a foreign corporation's application to do business in Kansas." *Merriman*, 282 Kan. at 444. Rejecting this argument, the court held that the statute, "in fact, [] requires a foreign corporation applying for authority to do business in Kansas to consent not only to service of

---

[3] The prior version of the statute was not identical but the difference is not material to the issue at bar. K.S.A. 2005 Supp. 17–7301 stated as follows "an irrevocable written consent of the foreign corporation that actions may be commenced against it in the proper court of any county where there is proper venue by service of process on the secretary of state as provided for in K.S.A. 60–304, and amendments thereto, and stipulating and agreeing that such service shall be taken and held, in all courts, to be as valid and binding as if due service had been made upon *an officer of the corporation*." (change in statute in italics).

process on the Secretary of State, but also to consent '*that actions may be commenced against it in the proper court of any county where there is proper venue by service of process on the secretary of state as provided for in K.S.A. 60–304.*'" *Id.* at 444–45 (emphasis in original). In conclusion, the court found that a "foreign corporation applying for authority to do business in Kansas under K.S.A. [17-7931(g)] expressly consents to personal jurisdiction and K.S.A. [17-7931(g)] provides a statutory basis for jurisdiction." *Id.* at 445. The court went on to determine that general jurisdiction based on this consent did not violate the defendants' due process rights.

In this case, Defendant acknowledges *Merriman*'s holding, but argues that the Kansas Supreme Court's interpretation of K.S.A. 17-7931(g) violates due process. Both the Kansas Supreme Court and federal courts from this district have rejected similar arguments on the basis of *Pennsylvania Fire Ins. Co. v. Gold Issue Mining*, 243 U.S. 93 (1917). *Merriman*, 282 Kan. at 450-51; *Freedom Transportation, Inc. v. Navistar Int'l Corp.*, No. 18-2602-JAR-KGG, 2019 WL 4689604, at *20 (D. Kan. Sept. 26, 2019), *motion to certify appeal denied*, 2020 WL 108670 (D. Kan. Jan. 9, 2020) (citing cases). In that century-old case, the United States Supreme Court held that a Missouri statute that required an insurance company to consent to jurisdiction in Missouri in exchange for a license to do business in that state did not violate due process. *Pennsylvania Fire*, 243 U.S. at 94. *Pennsylvania Fire* hailed from the heyday of *Pennoyer v. Neff*, 95 U.S. 714 (1877), when personal jurisdiction was highly constrained by the territorial limits of the forum. *See Daimler*, 517 U.S. at 125-26. But much has changed since then, particularly with respect to the personal jurisdiction framework wrought by *International Shoe v. Washington,* 326 U.S. 310 (1945), and its progeny. The Kansas Supreme Court and other judges from the District of Kansas have concluded, either implicitly or explicitly, that *Pennsylvania Fire* is still good law. *Merriman*, 282 Kan. at 450-51; *Freedom Transportation, Inc.*, 2019 WL 4689604, at *20 (citing cases); *In re*

*Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 1047996, at *2 (D. Kan.

Mar. 11, 2016), *on reconsideration in part*, No. 14-MD-2591-JWL, 2016 WL 2866166 (D. Kan.

May 17, 2016).  However, the undersigned is not so sure.

This uncertainty flows from *International Shoe* and its progeny.  There is often a tendency

to think of *International Shoe* as a case on specific personal jurisdiction based on the underlying

facts.  But in her majority opinion in *Daimler*, Justice Ginsburg noted that *International Shoe* dealt

with personal jurisdiction writ large:

> *International Shoe* 's conception of "fair play and substantial justice" presaged the development of two categories of personal jurisdiction. The first category is represented by *International Shoe* itself, a case in which the in-state activities of the corporate defendant "ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on." 326 U.S., at 317, 66 S. Ct. 154. *International Shoe* recognized, as well, that "the commission of some single or occasional acts of the corporate agent in a state" may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity. *Id.*, at 318, 66 S. Ct. 154. Adjudicatory authority of this order, in which the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984), is today called "specific jurisdiction." . . . .
> *International Shoe* distinguished between, on the one hand, exercises of specific jurisdiction, as just described, and on the other, situations where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U.S., at 318, 66 S. Ct. 154. As we have since explained, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S., at ——, 131 S. Ct., at 2851; *see id.*, at ——, 131 S. Ct., at 2853–2854; *Helicopteros*, 466 U.S., at 414, n. 9, 104 S. Ct. 1868.

*Daimler*, 571 U.S. at 126–27.[4]

---

[4] *See also id.* at 138 ("Turning to all-purpose jurisdiction, in contrast, *International Shoe* speaks of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit ... on causes of action arising from dealings entirely distinct from those activities."

In the wake of *International Shoe*, the Supreme Court has repeatedly cautioned lower courts about relying on personal jurisdiction standards from the *Pennoyer* era. For example, in *Shaffer v. Heitner*, the Court said, "We therefore conclude that *all assertions of state-court jurisdiction* must be evaluated according to the standards set forth in *International Shoe* and its progeny." 433 U.S. 186, 212 (1977) (emphasis added). And in a footnote accompanying that very statement, the Court continued:

> It would not be fruitful for us to re-examine the facts of cases decided on the rationales of *Pennoyer* and *Harris* [*v. Balk*, 198 U.S. 215 (1905)] to determine whether jurisdiction might have been sustained under the standard we adopt today. *To the extent that prior decisions are inconsistent with this standard, they are overruled.*

*Id.* n.39 (emphasis added). Indeed, in *Daimler*, itself, the Court noted that certain personal jurisdiction cases "decided in the era dominated by *Pennoyer*'s territorial thinking . . . should not attract heavy reliance today." *Daimler*, 571 U.S. at 138 n.18.

Accordingly, the question seems to be whether *Pennsylvania Fire*'s holding that compelled consent to general jurisdiction in a registration-to-do-business statute is "inconsistent with" the standards from *International Shoe* and its progeny (including now *Daimler*), such that it falls within the sweep of *Shaffer*'s statement that such cases are overruled. *Shaffer*, 433 U.S. at 212 n. 39. Compelling a business to surrender the robust due process rights associated with not being subject to general jurisdiction in a state in exchange for the privilege of doing business in that state seems like an awfully exacting price to require when our current jurisprudence clearly provides ample means to acquire specific personal jurisdiction over that business for activities arising out of its activities related to the forum state. Other courts considering these types of issues in the wake of *Daimler* have concluded that statutes similar to K.S.A. 17-7931(g) cannot survive or are otherwise called into question to the point that their interpretation must be constrained to that of

11

consent to service of process rather than a consent to general jurisdiction. *See, e.g., Gulf Coast Bank v. Designed Conveyor Sys. LLC*, No. 16-412, 2017 WL 120645, * 7-8, n. 39 (M.D. La. Jan. 12, 2017) (citing cases); *Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016). Ultimately, the court need not resolve this constitutional question now, since, as explained below, K.S.A. 17-7931(g) does not establish general jurisdiction in this case. However, in an appropriate case, it may be necessary to complete the constitutional analysis.

Returning to *Merriman*'s treatment of K.S.A. 17-7931(g), in finding that the statute requires a foreign entity to consent to jurisdiction, the Kansas Supreme Court noted the statutory language which states that "actions may be commenced against it in the proper court of any county where there is proper venue *by service of process on the secretary of state as provided for in K.S.A. 60–304*." *Id.* at 444-45 (emphasis provided). In *Merriman*, there was no discussion of service of process on the defendants in that case. The statute, however, makes clear that it is applicable only when service of process is made on the secretary of state under K.S.A. 60-304. Here, there was no service of process on the secretary of statute. (Doc. 7.) Instead, service was made on Defendant's registered agent. (*Id.*) Indeed, service on the secretary of state was not even authorized under K.S.A. 60-304, which limits such service to situations in which a foreign entity fails to appoint or maintain a resident agent for service of process, or when the registered agent cannot be found at the registered office. K.S.A. 60-304(f)(1), (2). Thus, according to the plain language of the statute, K.S.A. 17-7931(g) only purports to compel consent to general jurisdiction when a foreign business fails to appoint or maintain a registered agent for service of process, or that agent cannot be found, such that it would be lawful to serve the secretary of state; by contrast, it appears from the statute that the foreign business can completely avoid the compelled consent to general jurisdiction by properly maintaining an available registered agent for service of process.

That is what Defendant apparently did in this case, as the proof of service filed in the docket shows service on Defendant through a registered agent. Therefore, by its plain terms, K.S.A. 17-7931(g) is inapplicable to this action.

## 2. Specific Jurisdiction

Next, Plaintiff argues that this court can exercise personal jurisdiction over the class claims because the court has specific personal jurisdiction over Plaintiff's claim. Plaintiff argues that, with respect to class allegations, the court need not find that personal jurisdiction is met for the entire class. Rather, Plaintiff argues that the only claim considered when undertaking the personal jurisdiction analysis is the named class representative's claim. In support of her position, Plaintiff has cited to authority that stands for the proposition that jurisdictional principles of class actions are treated differently so that "the class as a whole is the litigating entity, and its affiliation with a forum depends only on the named plaintiffs." (Doc. 17 at 6) (quoting *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020)).

Nationwide class actions involving nonresident defendants are not new. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011) (recognizing that plaintiffs could maintain nationwide, companywide class action brought in California if the class demonstrated that the entire company "operate[d] under a general policy of discrimination" and other Rule 23 requirements were met); *Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1208–09, 1213–17 (10th Cir. 2014) (affirming class certification of nationwide class action arising under ADA as to nonresident defendant's 249 country-wide stores).[5] But, the argument that the court may lack personal jurisdiction over a nationwide class action involving a nonresident defendant who is not subject to general personal jurisdiction in the forum at issue has been heavily litigated

---

[5] This authority was not confronted with the question that the court is confronted with in this case. As noted by Defendant, the defense of lack of personal jurisdiction is waivable. Fed. R. Civ. P. 12(h).

only recently due to the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). A summary of the Court's opinion is relevant to the issues discussed herein.

In *Bristol-Myers*, the Supreme Court addressed the due process protections of the Fourteenth Amendment as they applied to a California state court's exercise of specific jurisdiction over state law tort claims brought by nonresident plaintiffs against a nonresident defendant. 137 at 1778-89. The defendant was incorporated in Delaware and headquartered in New York. *Id.* at 1777. The plaintiffs in *Bristol-Myers* were a group of 678 individuals - 86 California residents and 592 residents from 33 other states - who filed a mass action under eight separate complaints alleging injuries caused by Plavix, a drug manufactured by Bristol-Myers. *Id.* at 1778. The injuries of the nonresidents were not suffered in California. The California Supreme Court held that the California courts could exercise specific jurisdiction over the nonresident plaintiffs' claims "because the claims of the nonresidents were similar in several ways to the claims of the California residents." *Id.* at 1779. In finding that personal jurisdiction was met, the California court used a "sliding scale approach" to specific jurisdiction. *Id.* at 1778.

The Supreme Court reversed and held that the state court lacked specific jurisdiction to entertain the nonresidents' claims. Specifically, the court found relevant that the plaintiffs at issue were not California residents and did not claim to have suffered harm in California. The conduct giving rise to the claim occurred in states other than California. *Id.* at 1782. These plaintiffs were not prevented, however, from joining together in states where the defendant was subjected to general jurisdiction or in their own home state. *Id.* at 1783. The Court limited this decision to "the due process limits on the exercise of specific jurisdiction by a state," and left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal

jurisdiction by a federal court." *Id.* at 1783-84. In her dissent, Justice Sotomayor noted that "[t]he Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum state seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789, n. 4 (Sotomayor, J., dissenting)(citing *Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002)).

After *Bristol-Myers*, courts have largely taken three different approaches to motions similar to the one before the court. First, a limited number of district courts and one circuit court have held that this issue should be deferred until class certification. *See Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293, 295-300 (D.C. Cir. 2020). Second, a limited number of district courts have held that the due process concerns in *Bristol-Myers* apply to defendants in a class action and struck or dismissed class claims on this basis. *See Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020) (citing cases). Defendant urges the court to agree with this line of authority and find that *Bristol-Myers* is applicable in this context - a Rule 23 nationwide class action involving a federal statute and a nonresident defendant. Defendant argues that the court must consider its due process rights even with respect to unnamed class members.

Finally, the majority of district courts and two circuit courts have held that *Bristol-Myers* does not apply outside of mass tort cases. *See Mussat*, 953 F.3d at 445–48; *Lyngaas v. Ag*, 992 F.3d. 412, 434-38 (6th Cir. 2021). Plaintiff urges the court to follow the reasoning in this line of cases. Reviewing *Lyngaas*, which largely relies on *Mussat*, the Sixth Circuit held that *Bristol-Myers* was not applicable because "long-standing precedent shows that courts have routinely exercised personal jurisdiction over the out-of-state defendants in nationwide class actions." *Lyngaas*, 992 F.3d at 433. The court further held that the holding in *Bristol-Myers* does not extend to class actions because a defendant only litigates against a class representative in a class action

and absent class members are not "parties" for "certain jurisdictional purposes." *Id.* at 435.  While there are differences between *Bristol-Myers'* mass action and a Rule 23 nationwide class action, the court agrees that the due process concerns recognized in *Bristol-Myers* and other Supreme Court precedent would foreclose a nationwide class action that is not limited to a nonresident defendant's conduct in the forum state.  The arguments relied on by the courts in *Lyngaas* and *Mussat* are not persuasive for the reasons discussed herein.

As discussed initially, this action is based on a federal statute and therefore implicates the Fifth Amendment.  The Fourteenth Amendment is applicable here though as well because there is not a federal statute authorizing nationwide service.  Therefore, according to the rule authorizing jurisdiction over Defendant, Rule 4(k)(1)(A), the Fourteenth Amendment's protections are applicable.  *Lyngaas v. Ag*, 992 F.3d 412, 438–39 (6th Cir. 2021) (Thapur, J., concurring) (citing *Daimler*, 571 U.S. at 121 ("The question presented is whether the Due Process Clause of the Fourteenth Amendment precludes the [federal] District Court from exercising jurisdiction over Daimler in this case ....") (alterations in original); *see also United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (applying Fourteenth Amendment to federal question action).  Although this clarification may be academic because the Tenth Circuit has held that the "Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical [because] both were designed to protect individual liberties from the same types of government infringement," it is significant that the constraints found under the Fourteenth Amendment are directly applicable to Defendant's rights at issue here.  *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (citation omitted).[6]

---

[6] In *Bristol-Myers*, the Court noted that it was leaving "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1783–84.

Turning to the issue at bar, it is important to note that none of the decisions finding that a court can exercise personal jurisdiction over a nonresident defendant in a nationwide class action held that a nonresident plaintiff could bring suit against that nonresident defendant for actions that did not occur in the forum state. That question was addressed by *Bristol-Myers*. It did not matter that the entire group of plaintiffs in *Bristol-Myers* suffered a similar injury and, presumably, there were similar questions of fact regarding those injuries. The nonresident plaintiffs had no connection to California, the forum state, and the nonresident defendant was not subject to general personal jurisdiction there. Here, Plaintiff is not arguing that a Colorado employee could bring suit in this forum against this Colorado company for actions related to an employment decision in Colorado. But, what Plaintiff is in effect arguing, is that the same Colorado employee could be a member of the putative class and that would not violate Defendant's due process rights. Why is that? Simply because, as Plaintiff argues and other courts have found, a court only looks to the named plaintiff in determining whether a court has personal jurisdiction over a defendant. This reasoning is based on the argument that a class member is determined to be a party for only some purposes and that subject matter jurisdiction is determined by the allegations pertaining to the named representatives. While these statements regarding the law are accurate, they do not carry the day in convincing the court that a defendant's due process rights are set aside in a class action. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties.").

> In the end, this issue is not fundamentally about *Bristol-Myers Squibb*. That decision just clarified when a court has specific jurisdiction over a corporate defendant with regard to many identical claims. The question is whether a court must have personal jurisdiction over that defendant as to the claims of absent class members at all. Following *Shutts* and the basic principles of jurisdiction, the answer is yes.

*Lyngaas*, 992 F.3d at 442–43 (Thapur, J., concurring).

In support of her argument that jurisdictional principles are treated differently with respect to class actions, Plaintiff cites to *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). As discussed by Judge Thapur in his concurrence in *Lyngaas*, *Shutts* actually supports a finding that the court must have personal jurisdiction as to the claims of unnamed class members in order to bind the parties to a class action. *Lyngaas*, 992 F.3d at 440 (Thapur, J., concurring). In *Shutts*, the defendant was sued in Kansas, a forum in which it was a nonresident. The nationwide class action alleged that the defendant owed the class members interest on delayed royalty payments. The defendant argued that the Kansas court lacked personal jurisdiction *over the nonresident plaintiffs*. The Court held that the Kansas court did have personal jurisdiction as to the absent class members because they had a "meaningful chance to opt out of the class, the choice not to opt out implied consent." *Id.* (citing *Shutts*, 472 U.S. at 812-14.) Although *Shutts* addressed personal jurisdiction pertaining to the absent class members, "there is no reason to think that the analysis is one-sided." *Id.* A defendant's due process interests "are even more acute than those of absent class members." *Id.* at 441 (citing *Shutts*, 472 U.S. at 807) ("[T]he requirement that a court have personal jurisdiction comes from the Due Process Clause's protection of the defendant's personal liberty interest, and ... represents a restriction on judicial power ... as a matter of individual liberty."). Here, Defendant has objected to this court's jurisdiction over Defendant, not over absent putative class members.

Notwithstanding these longstanding interests, Plaintiff, and the authority she cites, assert that the court need only have jurisdiction to adjudicate her claims as the class representative in order to bind the entire class. Plaintiff argues that historically the Supreme Court and the Tenth Circuit have allowed class claims to continue where the defendant was only subject to specific

jurisdiction in the forum state. In *Lyngaas* and *Mussat*, the courts cite to *Wal-Mart* and *Shutts* as support for the proposition that these class actions were allowed to proceed. *Lyngaas*, 992 F.3d at 433; *Mussat*, 953 F.3d at 448. Significantly, however, the issue of the whether the court lacked personal jurisdiction *over the defendant* was not raised in these cases. As discussed previously, a lack of personal jurisdiction is a waivable defense. Therefore, the fact that these cases proceeded without the court ruling on whether it had personal jurisdiction over the defendant as to the unnamed class members is not persuasive as a court would not be expected to raise this issue sua sponte. Moreover, as noted by Judge Thapur, prior to *Daimler*, companies who operated a national business with continuous and systematic contacts were typically thought to be subject to general jurisdiction in every state. *Lyngaas*, 992 F.3d at 442 (Thapur, J., concurring).

Another argument presented is that class members are not considered parties when it comes to subject matter jurisdictional inquiries so therefore the court need not consider them when deciding whether the court has personal jurisdiction. *See Mussat*, 953 F.3d at 447-48; *Lyngaas* 992 F.3d at 437-38. A court can exercise subject matter jurisdiction over class member claims that do not meet the statutory requirements for the amount in controversy and diversity. *Lyngaas*, 992 F.3d at 443 (Thapur, J., concurring). This is because "the supplemental jurisdiction statute authorizes them to." *Id.* (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.") Those requirements are not

constitutional. *Id.* (citing *Exxon Mobi*l, 545 U.S. at 566–67; *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967)).

While Congress could certainly modify statutory requirements for personal jurisdiction, it has not done so here. *See id.* Therefore, the argument that this court need not determine whether it has personal jurisdiction over Defendant with respect to absent class members' claims is not persuasive. This court is constrained by the constitutional requirements of due process. *See In re Dental Supplies Antitrust Litig.*, No. 16CIV696BMCGRB, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[ ] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case."). "It doesn't matter that the defendant, unlike the absent class members, is already present in court to defend against the representative's claim. A defendant's due process interests do not vanish just because it has been haled into a forum." *Lyngaas*, 992 F.3d at 441 (Thapur, J., concurring).

Supreme Court precedent does not suggest "that a particular quantum of local activity should give a State authority over a far larger quantum of activity having no connection to any in-state activity." *Daimler*, 571 U.S. at 139 n. 20 (internal quotations omitted). This principle was directly addressed by *Bristol-Myers*. Moreover, the primary concern in determining personal jurisdiction is the "burden on the defendant." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *World-Wide Volkswagen*, 444 U.S. at 292.) "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* As noted above, this court would not have jurisdiction over this claim if it would have been brought by a Colorado resident who was employed by Defendant in

Colorado. A defendant should not be required to litigate claims that have no connection to this state solely because the claims are those of unnamed class members. The fact that these claims involve common questions of fact and law and could be certified as a class action under Rule 23 do not make Defendant's due process rights "vanish." *Lyngaas*, 992 F.3d at 441 (Thapur, J., concurring); *see also Bristol-Myers*, 137 S. Ct. at 1781. The Supreme Court has emphasized that "Rule 23's [class action] requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting 28 U.S.C. § 2072(b)).

Although Plaintiff has not yet moved for class certification, the court finds as a matter of law that it could not certify Plaintiff's proposed nationwide class action against Defendant because it could include claims of class members that have no connection to Kansas and would be subject to dismissal due to lack of personal jurisdiction. Therefore, Plaintiff is foreclosed from representing a nationwide class action in this forum. *See Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018); *see also Molock*, 952 F.3d at 303 (Silberman, J., dissenting) (discussing that a party can move to dismiss class allegations if the named plaintiff's claim of entitlement to represent a class is defective as a matter of law); *see also Baum v. Great Western Cities, Inc.*, 703 F.2d 1197, 1210 (10th Cir. 1983) (finding trial court did not abuse its discretion in granting a motion to dismiss the class action).

Although Defendant has filed its motion as one to dismiss, several courts have instead struck pleadings under Rule 23(d)(1)(D) or Rule 12(f) upon finding that a class could not be certified as proposed. *See Hull v. Viega, Inc.*, No. 12-2086-JAR-DJW, 2013 WL 759376, at *3, n. 13 (D. Kan. Feb. 27, 2013) (citing cases); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-

2591-JWL, 2016 WL 1391045, at *2 (D. Kan. Apr. 7, 2016); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (recognizing that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.")  The court finds that striking the class allegations is the proper procedural avenue here.  *See Lyngaas*, 992 F.3d at 445 (Thapur, J., concurring) (stating that the proper procedure in this circumstance is to strike the pleadings under Rule 23(d)(1)(D); dismissal would be premature because the claims of putative class members are not before the court until certification).

In its memorandum, Defendant also requests other relief the court deems proper.  (Doc. 11 at 20.)  Therefore, as the parties have already fully briefed this issue and no further briefing is necessary, the court will grant Defendant's motion in part and strike the class allegations.  In light of this ruling and the early stage of the proceedings, Plaintiff is granted leave to file an amended complaint within fourteen days of this order narrowing her class allegations to Kansas employees or prospective employees.

## IV. Conclusion

Defendant's motion to dismiss (Doc. 10) is GRANTED IN PART and DENIED IN PART.  The class allegations are ordered struck from Plaintiff's complaint.  Plaintiff is granted leave to file an amended complaint within fourteen days of this order narrowing her class allegations to Kansas employees or prospective employees.

IT IS SO ORDERED.  Dated this 28th day of June, 2021.

_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE